IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | | |
|---|---|---|
| HAROLD BLISS,<br>　　　　Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§<br>§ | Civil Action No. 6:14-CV-016-BL |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br>　　　　Defendant. | §<br>§<br>§<br>§ | Assigned to U.S. Magistrate Judge |

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Harold Bliss seeks judicial review of the decision of the Commissioner of Social Security (Commissioner), who denied his application for supplemental security income (SSI) and disability insurance benefits (DIB) under Titles II and XVI of the Social Security Act (Act). The United States District Judge reassigned the case to this court pursuant to 28 U.S.C. § 636(c). (Docs. 5, 6). The parties have not consented to proceed before a United States Magistrate Judge. After considering all the pleadings, briefs, and administrative record, this court recommends the decision of the Commissioner be affirmed and this case be dismissed.

### I. STATEMENT OF THE CASE

Plaintiff protectively filed his claims for SSI and DIB on September 6, 2011. His claim was denied initially on November 14, 2011, and again upon reconsideration on January 12, 2012. On October 1, 2012, an Administrative Law Judge (ALJ) held a hearing at which Plaintiff testified. In a written decision dated December 18, 2012, the ALJ determined that Plaintiff was not disabled under the Act.

Specifically, the ALJ decided: After June 30, 2009, there had been a continuous twelve

1

month period during which Plaintiff did not engage in substantial gainful activity (SGA); Plaintiff had a learning disorder, borderline intellectual functioning (BIF), and obesity, the combination of which was severe; and Plaintiff's severe combination of impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Appendix 1). The ALJ also determined that Plaintiff had the following residual functional capacity (RFC):

> [Plaintiff] has no limits physically and can perform the full range of work, except he is limited to occupations with a reasoning development level of one or two, as defined in the Dictionary of Occupational Titles; he should have no more than superficial contact with the public, supervisors, or co-workers; and he should not perform occupation (sic) requiring reading above the first grade level or mathematical skills above the fourth grade level. He has no other exertional or nonexertional limitations. He can work full-time at his residual functional capacity on a consistent, sustained basis and maintain employment for an indefinite period of time.

Finally, the ALJ determined that considering his age, education, and experience, together with his RFC, Plaintiff was "able of performing his past relevant work as a janitor, both as actually performed and as generally performed in the national economy." Tr. 20. Accordingly, the ALJ determined that Plaintiff was not disabled under the Act, and denied his application for SSI and DIB. The Appeals Council denied review on December 30, 2013. *Id.* at 4–8. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

## II. FACTUAL BACKGROUND

Plaintiff was born in 1983. He graduated high school, proceeding through the special education program. Thereafter, he worked several jobs, some which he testified about at his administrative hearing. He worked full-time as a laborer in a production plant, loading buckets of

2

material into a large processor. He worked full-time as a janitor at a facility that produced and sterilized needles. Most recently, including up to and through his administrative hearing, Plaintiff worked at Goodwill Industries in intake. He would process and sort donated items, primarily in the back room, having little contact with customers. Plaintiff would occasionally have to lift items weighing up to fifty pounds. He testified he would "take in donations and help lift toys and stuff." Tr. 30. At the time of the administrative hearing, he had been working at Goodwill twenty hours per week for approximately two years.

Plaintiff claims the combination of his learning disorder, BIF, and obesity render him disabled under the Act.

### III. STANDARD OF REVIEW

A person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)–(b) (2013).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing she is disabled through the first four

steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps 4 and 5, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

This court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry into whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson*, 309 F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "'[c]onflicts in the evidence are for the Commissioner and not the courts to resolve.'" *Id.* (quoting *Newton*, 209 F.3d at 452).

## IV. DISCUSSION

Plaintiff raises a single issue on appeal. He claims: "The ALJ failed to conduct any analysis as to whether Plaintiff's impairments equaled listing 12.05(c)." Pl.'s Br. 2.

### I. Meets or Medically Equals A Listing

As step three, the ALJ asks whether a claimant's impairment meets or medically equals

an impairment listed in Appendix 1. *See, e.g., Audler*, 501 F.3d at 448. The burden is on the claimant to prove with medical evidence that he satisfies all the criteria in the listing. *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990) (per curiam). If a claimant cannot show he "meets" all the criteria in the listing, he may nonetheless seek to prove he "medically equals" a listing, which would thereby render him disabled. *See Sullivan v. Zebley*, 493 U.S. 521, 531 (1993); 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Zebley*, 493 U.S. at 531 (emphasis in original).

The opening paragraph to section 12.00 covering Mental Disorders in Appendix 1 reveals the unique nature of the listing at issue in this case, listing 12.05 – Intellectual Disability.[1] The opening paragraph reads:

> The structure of the listing for intellectual disability (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing. Paragraphs A and B contain criteria that describe disorders we consider severe enough to prevent your doing any gainful activity without any additional assessment of functional limitations. For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, *i.e.*, is a "severe" impairment(s), we will not find that the additional impairment(s) imposes "an additional and significant work-related limitation of function," even if you are unable to do your past work because of the unique features of that work. Paragraph D contains the same functional criteria that are required under paragraph B of the other mental disorders listings.

Appendix 1, § 12.00.

Plaintiff concedes he does not fit this definition. He does not claim he "satisfies the

---

[1] The term "intellectual disability" was formerly "mental retardation."

diagnostic description in the introductory paragraph and any one of the four sets of criteria" such that he "meets" a listing. Instead, Plaintiff bases his argument on the "medically equals" language in the regulation, as discussed further below. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The listing Plaintiff claims he medically equals is 12.05, which reads *in toto*:

> 12.05 *Intellectual disability*: intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>    A. Mental incapacity evidenced by dependence upon others for personal needs (*e.g.*, toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>    OR
>    B. A valid verbal, performance, or full scale IQ of 59 or less;
>    OR
>    C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>    OR
>    D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>       1. Marked restriction of activities of daily living; or
>       2. Marked difficulties in maintaining social functioning; or
>       3. Marked difficulties in maintaining concentration, persistence, or pace; or
>       4. Repeated episodes of decompensation, each of extended duration.

Appendix 1, § 12.05.

Plaintiff frames his argument within the bounds of subparagraph C. Pl.'s Br. 2–3. Meaning, Plaintiff concedes he does not meet paragraph C, but alleges he medically equals paragraph C. Put another way, Plaintiff claims he presented "medical findings equal in severity to *all* the criteria" for listing 12.05(C), which, again, includes the introductory paragraph in section 12.05 plus subparagraph C. *Zebley*, 493 U.S. at 531 (emphasis in original).

The introductory paragraph of 12.05 requires deficits in adaptive functioning, of the kind discussed in section 12.00(C)(1). These activities include cleaning, taking public transportation, caring for one's grooming, and maintaining personal hygiene. Plaintiff himself testified he could effectively and appropriately do these activities. Tr. 18. The ALJ found that Plaintiff's "learning disorder and [BIF] have no more than mildly restricted [Plaintiff's] activities of daily living." *Id.* at 19. Leaving aside the requirement that deficits manifest prior to age 22, even assuming Plaintiff fits the introductory paragraph's description as to adaptive functioning, he must also present medical findings equal in severity to all the criteria in subparagraph C. *Zebley*, 493 U.S. at 531

Obviously, it is difficult to present medical evidence "equal in severity" to an IQ score of 70, when one's IQ score is unquestionably higher than 70. Such failing would presumably foreclose any further analysis of medical equivalence. However, the Social Security Administration (SSA) publishes a Program Operating Manual System (POMS), the Disability Insurance (DI) portion of which applies to help fill that logical gap. POMS DI 24515.056 is entitled Evaluation of Specific Issues—Mental Disorders—Determining Medical Equivalence, and section (D)(1)(c) thereof reads:

> Listing 12.05(C) is based on a combination of an IQ score with an additional and significant mental or physical impairment. The criteria for this paragraph are such that a medical equivalence determination would very rarely be required. *However, slightly higher IQ's (e.g., 70–75) in the presence of other physical or mental disorders that impose additional and significant work-related limitation of function may support an equivalence determination.* It should be noted that generally the higher the IQ, the less likely medical equivalence in combination with another physical or mental impairment(s) can be found.

POMS DI 24515.056(D)(1)(c) (emphasis added).

Plaintiff alleges he has a "slightly higher" IQ and "other physical or mental disorders" within the meaning of POMS 24515.056. He claims his lowest valid verbal and performance IQ

7

scores were 71 and 75; a claim uncontested by Defendant. Pl.'s Br. 4. Plaintiff alleges physical impairments in the form of his weight and propensity to become out of breath. Tr. 42. At the time of the administrative hearing, he weighed 390 pounds. *Id.* at 36. When he worked as a janitor he weighed 350 pounds. *Id.* He claimed that his increased weight would cause him to lose his breath if he were to do his former janitorial tasks. *Id.* at 42.

At the administrative hearing, the ALJ heard testimony from Charles Massey. *See id.* at 45–50. Mr. Massey was Plaintiff's supervisor at Goodwill Industries the whole time Plaintiff was employed there. Mr. Massey testified he had never seen an example at Goodwill where Plaintiff's work interfered with his ability to work. *Id.* at 48. Further, Mr. Massey testified that from his observation of Plaintiff's physical condition, he saw no problem with Plaintiff being able to perform janitorial work. *Id.* At the administrative hearing, the ALJ asked Plaintiff whether he had ever sought healthcare help at the Medical Care Mission, a free healthcare provider for indigent individuals near where Plaintiff lives. Plaintiff said he had not. *Id.* at 42–43. Also supporting the idea that Plaintiff was not physically disabled was medical evidence from State Agency medical professionals, discussed further below. *See id.* at 16–20.

On balance, the ALJ determined that Plaintiff's testimony of his physical limitations was only credible to a certain degree. The ALJ gave the evidence suggesting Plaintiff was not physically disabled greater weight. Ultimately, the ALJ determined Plaintiff had "no limits physically." *Id.* at 16.

As to mental impairments, Plaintiff alleges he has a learning disability and BIF. Pl.'s Br. 3–5. He claims he completed high school in the special education program. *Id.* at 5. He stated he would have a hard time reading and understanding a typical newspaper article, nor could he not multiply and divide numbers. Tr. 42–43, 45. Dr. Pennissi Taylor, Ph.D., a psychologist who

examined Plaintiff, diagnosed him with a learning disorder and BIF. *Id.* at 275. Another psychologist, Dr. Jim Cox, Ph. D., diagnosed Plaintiff with a learning disability and ADHD. *Id.* at 283. Notably, neither psychologist diagnosed Plaintiff with intellectual disability.

The ALJ gave great weight to the medical opinions of Drs. Taylor and Cox, and determined that Plaintiff had a learning disorder and BIF. *Id.* at 16. However, neither Plaintiff's BIF nor his learning disorder, nor his physical impairments discussed above, alone, were "severe" under the regulations. *Id.* The ALJ decided that it was the combination of these mental and physical impairments that was severe. *Id.* n. 4.

The court, of course, notes the opening paragraph of the Mental Disorders section appears to equate such a finding of severity to a significant limit in a claimant's physical or mental ability to do basic work related activities. *See* Appendix 1, § 12.00 ("For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, *i.e.*, is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920(c)."). Still, the plain language of POMS DI 24515.056 states that a finding of severity, and the concomitant finding of a significant limitation in work ability, *may* support an equivalency determination. POMS DI 24515.056(D)(1)(c). The manual does not mandate a finding of equivalence even if a claimant has an IQ of 71 and severe physical or mental impairments that significantly affect his ability to work. That is, even assuming Plaintiff fully fits POMS DI 24515.056(D)(1)(c), the ALJ may still clearly find that he does not medically equal listing 12.05(C). *See id.*

The court today must not reweigh the evidence to see if Plaintiff met the introductory paragraph of 12.05 as well as subparagraph C; the task for this court is not to ask if evidence exists on the record that contradicts the ALJ's conclusions. *Masterson*, 309 F.3d at 272. The task

for this court is to determine whether substantial evidence supports the ALJ's conclusion that Plaintiff did not meet or medically equal listing 12.05(C). *See Perales*, 402 U.S. 389; *Waters*, 276 F.3d at 718.

The ALJ discussed at length the extent of Plaintiff's physical and mental impairments, despite Plaintiff's claim to the contrary. *See, e.g.*, Tr. 18 ("I evaluated the intensity, persistence, and limiting effects of [Plaintiff's] impairment-related symptoms to determine the extent to which those symptoms limit his ability to function."); Pl.'s Br. 2 ("[Plaintiff's] point is that remand is required due to the absence of any findings or analysis on the 12.05c (sic) equivalency issue by the ALJ."); *Boyd v. Apfel*, 239 F.3d 698, 706 (5th Cir. 2001) (requiring an assessment of the extent of a claimant's impairments). Between all the evidence contradicting Plaintiff's claim, including the testimony of Mr. Massey and the medical opinions of examining and reviewing physicians and psychologists including Drs. Taylor and Cox, and the lack of affirmative evidence from Plaintiff, the ALJ could well have found that Plaintiff failed to "present medical findings equal in severity to *all* the criteria for [listing 12.05(C)]." *Zebley*, 493 U.S. at 531. The ALJ could well have found that Plaintiff's lack of physical limitations, and non-severe learning disability and BIF—despite the combination of such passing the *de minimus* hurdle of being called "severe"—failed to reach the high hurdle to meet or medically equal a listing. *See, e.g.*, *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985).

Considering the entire record, then, it is plain that substantial evidence supports the ALJ's determination that Plaintiff did not meet or medically equal listing 12.05. Because substantial evidence supports the ALJ's determinations, his decision is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

## V. CONCLUSION

For the foregoing reasons, it is therefore **RECOMMENDED** that the decision of the

Commissioner be **AFFIRMED** and Plaintiff's complaint be **DISMISSED**.

**IT IS ORDERED** that this case is **TRANSFERRED** back to the docket of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED.**

Dated this 15th day of May, 2015.

_____
E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**